May it please the Court, Your Honors, my name is Brian Schwartz and I represent Plaintiff Appellant Deborah Ulloa. We would not be sitting here today if the Postal Service had simply done what it planned to do and pay Ms. Ulloa back pay through June 22, 2000, instead of, in August of 2004, putting the matter back into the hands of the same EEO manager, Nancy Howe, who failed compliance the EEOC had just found egregious and unacceptable. And so what did Ms. Howe do next after getting this matter put back in her hands by the EEOC? She initiated an action which took away over $180,000. Well, I understand that, but what is it in the employment relationship in the history that makes the June 2000 date the right one? Okay, Your Honor, that is the date, and I would be happy to go through more of a timeline, but that is the date on which the EEOC. But what relevance is that? Your Honor, on that date they awarded her back pay to the date of the decision. Now, whether or not the back pay should have continued to run or not, that was a date had proceeded on paying Ms. Ulloa back pay through that date and done so incorrectly in a manner that the EEOC found was egregious and unacceptable. She stopped working in 1993. She never actually went back to work after 1993. In 1989, she stopped working. Oh, 1989, I thought it was. I'm sorry. I'm giving her more of the benefit of the doubt. But certainly by 2000 or by 2005, she wasn't an employee anymore. She was in a leave without pay, injured on duty status. She was on workers' comp. She was an employee. And there's extensive evidence in the record that supports that, Your Honor, that it's detailed, and I could go through it as well, but it's detailed at pages 11 and 12 of our briefs. She was not entitled to any pay. She was entitled to back pay per the award when an employee goes on workers' comp or is unable to work because of an act of discrimination. It is not proper for the agency then to claim as some kind of a mitigation factor, oh, she was not looking for work or she wasn't working, because her failure to work was due to their discrimination. And the key moment is that's a question. I guess when she took, I know this was changed on the books later, but she took a disability retirement. What happened, Your Honor? And so at a minimum, isn't that her statement that she's willing to sever the employment relationship herself? No, Your Honor, it's not. In 1993, well, let me go through the timeline briefly just so you follow this, because it obviously goes back a long way. In 1989, she had to stop working because of the sexual harassment and discrimination. She went on workers' comp. They took away the workers' comp in 1992 and told her if you want to get any pay at all, you need to apply for disability retirement, which she did in 1993. Meantime, she was in appeal of her workers' comp. She won that appeal in 1994, and they paid back the Office of Personnel Management, all of the disability retirement, rescinded it, and she kept right on being on workers' comp after that point. So she was not on disability retirement, and they were aware in 2000, when she won the CEOC award, they were aware that she had filed that disability retirement previously, didn't consider it significant, were planning on, according to all of the evidence of record, planning on paying her through 2000, and only after this decision in 2004, in August, where Ms. Howe's actions, failing to comply, were found egregious and unacceptable. At that point, she said, aha, what about that disability retirement? Let's go back and take away seven years of back pay from Ms. Ulloa. That's the timeline that occurred. And as a result, she suffered this adverse action. She would have gotten back pay through at least 2000, which is an extra $180,000, a very significant amount. This is not a subjective belief or some kind of fluff. This is a lot of money. And instead, what she got was notice that she had been retroactively terminated, as they said in one of their papers to the lower court, retroactively terminated back to 1993. She had been getting paperwork that she was on workers' comp, leave without pay, injured on duty, suddenly. Do you have authority that you can continue to be regarded as employed, even though you've taken a disability retirement? The disability retirement was rescinded. It was paid back. It was less than $8,000. She was on it for about 13 months, and it was paid back to the Office of Personnel Management. She was on workers' comp. She was getting paperwork all along saying she's on leave without pay, injured on duty status. And, Your Honor, there's ample precedent that where an employee has to go on workers' comp or even take a disability retirement due to discriminatory acts, that the employer should not benefit from that. As far as what they're liable to pay, there's case law from the Eighth Circuit, the Eleventh Circuit, the Third Circuit, the First Circuit, all of which we cited in our papers, which are clearly on point saying that a plaintiff who is unable to mitigate, unable to work due to a disability that was caused by the employer, that the employer should not benefit from that, that it should not cut off the back pay. So she should have been able to continue receiving it. And they, what's significant here is they had planned to pay it through June 22nd of 2000 until after this award in August of 2004. And it was at that moment that they said, aha, there was this disability retirement. Let's use that. This is a shell game they're playing. First they say, first they're trying to say, oh, well, you know, they do this fuzzy math and they come up with that she actually owes them $52,000, same Nancy Howe. She owes the Postal Service $52,000 for the 11 years of back pay the EEOC awarded. Then they say, egregious and unacceptable, she comes up with a new strategy. Okay. Actually, it was that disability retirement. We've been aware of it for years. But we're going to use that to go back and cut it off back in 1993. And now, Your Honor, you don't have to find here today, Your Honors, that this was retaliation. But the trier of fact could so find, because there's numerous examples of inconsistencies in the record. So the claim is that the taking it back was retaliation for? Retaliation for her extensive prior EEO activity, including the 2004 EEOC decision which found their actions egregious and unacceptable. And the rule should be, Your Honor, that when an employee or a former employee act, sorry, an employer or a former employer acts in responding to protected EEO activity in a manner that materially harms the employee or former employee's interest to engage in that activity, that it's inappropriate to award summary judgment at that point. What I have difficulty with, basically what you're saying is the fact that she disagrees with the amount of money that's being paid to her equals an adverse employment action rather than an adverse money action. And they're different. And I guess that's what I'm struggling with. There's no employment in the normal sense of the term for many years before this dispute arises. And the fact that they decide not to pay her really doesn't have anything to do with her employment. It has to do with whether, you know, they lived up to the settlement agreement or something else. But it isn't really an employment action. And that's what I'm struggling with. Your Honor, let me address that. So we feel it is an employment action. They say it in the patent. Oh, you do. And it's not subjective. Let me explain why. It appears to be subjective. Okay. Let me explain why. First of all, they acknowledged it was a retroactive termination. Okay. So they sort of put that out of dispute, acknowledging both in testimony of witnesses and in their prior briefing to the district court that it was a retroactive termination back to 1993. Second of all, Your Honor, it's employment because she's being treated as an employee on leave without pay, injured on duty this entire time. Now, they have ---- Except that workers' compensation can be paid to someone who has severed their employment relationship. If they're no longer an employee, they're not working anymore. It can be. And they can still be paid. It can be. But it wasn't here. Now, I'm not saying that they could not have terminated her. They have a process. They have a process that they go through. And they didn't follow their own process and here, which was to put somebody through the notice, opportunity to respond. There's a committee that that has to go through. There's a name of a form that they have to fill out. They didn't do any of that. They did this all undercover. And a failure to follow their own procedures in itself provides circumstantial evidence, proof of retaliation, as Judge Ripple found in the decision Lewis v. School District No. 70. There's a number of indicators that she was in fact an employee, though she doesn't need to be for it to be an adverse action under this Court's jurisprudence. If it had an adverse impact on her one way or another, whether she was an employee or not, even a former employee, it can still be an adverse action. But here she was an employee and there's a variety of things that we cite in the papers. First of all, she was getting contractual increases in her paperwork. She was getting documents that said that she was an employee, that she was on a leave, an employee on a leave without pay, injured on duty status, not a former employee. That she was her leave balance was fluctuating. That she got contractual step increase. That she received paperwork from workers' comp saying she was expected to return to work. That she received documents asking her to bid on jobs. There's a host of different things, all of which the district court disregarded. Now, again, ultimately the trier of fact may decide, okay, she's not an employee, but there's a lot of evidence here that she is. And it was improper to simply disregard all of that information. Just because she wasn't physically in the workplace day-to-day does not mean she was not an employee. That's the case of people who are on workers' comp. They're not physically in the workplace. They're still employed. They can terminate an employee on workers' comp, but they have to follow their own procedures. They didn't do that here, and that shows pretext. I'd like to reserve some time for rebuttal. You may. You have about four minutes. Good morning, Your Honors. May it please the Court, my name is Robert Liu. I'm an assistant U.S. attorney from the District of Arizona, today here representing John E. Potter, defendant and appellee. Let's step back for a moment. We throw around a lot of dates, a lot of facts. This case is really simple at its core. We'll keep a couple of dates in mind, and I'll make this case a lot simpler to digest. The plaintiff, Aloha, began her employment with the Postal Service in 1983, physically left the employment of the Postal Service in 1989. Then she applied for workers' compensation, was granted workers' compensation. That decision was later reversed by the Office of Workers' Compensation Program, OWCP. At that time, when it was reversed, she decided to elect, on her own, long-term disability benefits. In 1993, that application was granted. Thereafter, the Department of Labor reversed the OWCP position on the workers' comp, and gave her, essentially, back pay for workers' comp. At that point, Ms. Aloha had an election of remedies, essentially. She could either continue receiving workers' comp, or to elect long-term disability benefits. She elected workers' compensation. Nonetheless, she was still on long-term disability. She was classified as disabled, long-term disability, retired, even though, for all purposes, she was receiving workers' compensation benefits. Your Honor, that's the reason why the Postal Service struggled so mightily in complying with the EEOC decisions from 2000 to 2004, and ultimately 2005, when it was trying to issue her a back pay award. If an employee is on workers' comp, then technically, he or she is, for lack of a better word, still employed. If an employee is on long-term disability slash retirement, they no longer are an employee of the employer. It is because she was classified as long-term disabled, but still receiving workers' comp, which, for lack of a better word, threw the Postal Service employees for a loop. And it was Ms. Howell, at the time, who was working for the Postal Service, who was trying to make this back pay calculation, who was completely, I don't want to say befuddled, but was struggling with the fact that how do you calculate the end date for this employee? They were under the impression that because she was receiving workers' comp and pursuant to the EEOC award issued on June 2000, that perhaps, because of that, she should receive back pay through June of 2000. But as they researched the issue some more and looked at her earnings statements and even though she was receiving workers' comp, she was on long-term disability as of August 1993, and not only logically and not only intuitively, but legally, that's to her last date of separation from the Postal Service. And that's why the Postal Service used the August 1993 date as the cutoff. It wasn't arbitrary. In fact, June 2000 would have been arbitrary. As Your Honors asked counsel previously, why June 2000? Well, the only reason June 2000 has any sort of relevance to that decision was because that's the date of the EEOC order. And certainly we can't make a quasi-employee classification based upon an EEOC order date. Well, in the normal, you know, in a more conventional case where someone has been working and claims that because of sexual harassment she was denied all these promotions, the date of the EEOC decision would be the date from which back pay is calculated. Absolutely. I think that the EEOC decision itself said just back pay. That's correct. The EEOC, several of the EEOC decisions says back pay, you Postal Service, you go figure it out. And that's why they were struggling so hard with it. Okay. So the EEOC didn't make any attempt to determine whether the date at which the benefits would, the back pay was to be calculated? I should clarify that, Your Honor. In its interim decisions, the EEOC did not make a determination. Once the Postal Service tried to comply with the interim June 2000 decision, or, correct, the June 2000 decision, it made a determination, as I was speaking previously, that August 1993 should be the cutoff date. When Ms. Lua appealed that decision by the Postal Service, the EEOC affirmed the Postal Service decision that August 1993 not only logically but was legally the right date to calculate the back pay award based upon her own decision to go on long-term disability. But that was on a different track from the original decision of back pay. That's correct, Your Honor. And I do want to address for a minute counsel's point about her receiving various step increases, benefits and whatnot. Paperwork, yes. That's correct. And, again, this is just an administrative issue perhaps that GSA and the U.S. has to work out amongst itself. But every time the Postal Service has to issue a check to a former employee, they have to go through an administrative process and go through payroll. And once that payroll mechanism kicks in, in order to pay somebody, they actually have to transform them just for name purposes into an employee before their system can write a check to that person. And that's the reason why when in 2000 and in March 11, 2005, when the PS50 forms were generated, it made it look like Ms. Lua had all the benefits and wherewithal of an employee when in fact it was done just for administrative purposes and not to necessarily rehire her and then terminate her 12 days later on March 23. If there's no further questions for me, Your Honor, I have nothing else. Thank you. Thank you very much. Your Honor, a number of things worth explaining here. This is not just an innocuous, bureaucratic mishap. This is, that is a question for the ultimate trier of fact. This is, from our perspective, retaliation by somebody who had a history for years having to deal with Ms. Lua's claims, which were a real thorn in her side. Somebody who had, as of 2000, a file 2 feet high on her desk about Ms. Lua. Somebody who had to implement 25,000 hours of EEO training. Somebody who had to expend more than 100 hours on this case. All of that's in the record. That – what difference does that make? Well, this was a real pain in the neck for her. And so she was thrilled when she discovered – What evidence is there that she was thrilled and that – that – Your Honor, the way she described it – sorry. The way she described it was that this would be good news for the Postal Service that she had found that they could go back and save 7 years of back pay through this action she discovered in August of 2004. And the fact is there are a number of things that Ms. Howe and the Postal Service represented in this case that – Is that true? Sorry. Is what true? Isn't what she said true, that it would be good news? That she was – that she was working for the Postal Service. Certainly she was working for the Postal Service. There's no question. How is that evidence that she was motivated to get this? Your Honor, we don't need to show – get inside her head and show, you know, an admission by her of animus or something. What I'm saying is that there is background reason why one might believe that she would be irritated by this case, that she would be upset about being called out, that her compliance efforts were egregious and unacceptable. Just as if, Your Honors, if you came out with a decision saying plaintiff's counsel in this matter acted in a manner that was egregious and unacceptable, I might be upset by that. And similarly, she might have been upset by this. And we don't need to show more than that when we have, as we do, evidence that their positions articulated were unworthy of credence. Now, you don't have to make the ultimate decision that they were worthy of credence or unworthy, but we have contradictions. For example, and there are three major ones. One is them saying we couldn't pay her back pay after 1993 because she had been disability retired. Well, that's false. They had paid her back pay through 2000 according to their own calculations. There's extensive record evidence. So if that was erroneously paid, you're saying that they're stuck and you get the windfall? Your Honor, it's not a windfall. My client was out. Well, if it was erroneous, what are they supposed to do about it? Aren't they allowed to fix it? Your Honor, they had been treating her as an employee for years. That's not my question. If the Postal Service or anyone else in this circumstance determines that someone has, in fact, been overpaid, are they entitled to recoup that or correct it, even if they view it as good news whoopee? Your Honor, there was no finding that she had been overpaid. But are they allowed to correct an error that is processed? That is to the person's benefit. That is, as they explained it, a retroactive termination. They can go through their process. You really are not wanting to answer this question. No, I'm not. But it appears to me that if someone has overpaid what they owe for back pay and they discover that they have overpaid it, then the fact that they are happy that they get to fix it doesn't seem to make the fixing of it improper. But that's not what happened here. I understand you think that's not what happened here. But I can't even get you to talk about the fault. I'm happy to talk about it. Of course, a government agency that makes an error should be able to fix it. So if that were the case here, then I would agree that they're able to do that. I can answer that pretty simply. I think that addresses the question. But that's not what happened here. What happened here is that she was treated as an employee. She was an employee. They provide her no notice. They suddenly retroactively terminate her. It takes $180,000 out of her pocket. The position is really based on this paperwork that was coming out. Well, there's extensive – there is paperwork that shows what I'm saying. But there's also extensive testimony from them where she's saying it wasn't my idea. I was forced to do this by the EEOC. Then she's impeached. She admits it probably was my idea to go back and do this. Where she says we couldn't go back and process. So am I not being responsive? I'm trying to be. No. I think we can get what you're saying, and you've used your time. Okay. Thank you, Your Honor. Is there any further questions? Thank you. The case just argued is submitted for decision. Before we hear the next case, the Court will take a 10-minute recess. All rise.
judges: Schroeder, Ripple, Graber